DOA
01/31/2024

# UNITED STATES DISTRICT COURT
for the District of Arizona

United States of America  )
v.  ) Case No. 24-5028 MJ
Tonya Durinda Romero,  )
USC  )
*Defendant(s)*  )

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning on an unknown date in January 2024, and continuing through on or about January 31, 2024, in the District of Arizona, the defendant, Tonya Durinda Rombero, did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown, to transport and move within the United States, aliens who had come to, entered, and remained in the United States in violation of law, by means of transportation and otherwise, and in furtherance of such violation of law, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i).

This criminal complaint is based on these facts:

See attached Statement of Probable Cause, incorporated by reference herein.

☒ Continued on the attached sheet.

Reviewed by AUSA Lisa E. Jennis *Lej*

SAMUEL A MAGUIRE
Digitally signed by SAMUEL A MAGUIRE
Date: 2024.02.01 10:10:52 -07'00'

*Complainant's signature*

Samuel Maguire Border Patrol Agent

*Printed name and title*

Sworn to before me and subscribed telephonically.

Date: ~~January 31,~~ Feb. 1, 2024 @ 1:05pm

*Judge's signature*

City and state: Phoenix, Arizona

Honorable Deborah M. Fine, U.S. Magistrate Judge
*Printed name and title*

## STATEMENT OF PROBABLE CAUSE

I, Samuel Maguire, Border Patrol Agent with the United States Border Patrol, being duly sworn, declare and state as follows:

### INTRODUCTION AND BACKGROUND OF AFFIANT

1. I am a Border Patrol Agent (BPA) with the United States Border Patrol, United States Customs and Border Protection, currently assigned to the Casa Grande Border Patrol Station Prosecutions Unit. I have 12 years' experience as a BPA and I was trained at the Border Patrol Academy in Artesia, New Mexico in 2011. I have served on multiple details while being a BPA, including being a lead agent on a multitude of 1324 cases.

2. In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

### PROBABLE CAUSE

3. On January 30, 2024, at approximately 11:57pm Pinal County Sheriff's Office (PCSO) Deputy G. Riveroll observed a white Jeep Cherokee bearing Arizona license plate WLA3YN traveling westbound on Interstate State 10 (I-10). Deputy Riveroll ran a vehicle registration check on the license plate of the vehicle. The plate returned as having a suspended registration and no insurance. Based on this information, Deputy Riveroll conducted a vehicle stop on the white Jeep Cherokee. Deputy Riveroll activated the red and blue emergency lights on his marked patrol vehicle and initiated a vehicle stop. The white Jeep Cherokee yielded, pulling over to the right shoulder around mile marker 211 on I-10. Deputy Riveroll approached the vehicle and spoke with the driver, identified as Tonya Durinda ROMERO, a United States citizen. Deputy Riveroll observed a front

passenger who was identified via Arizona driver's license as Leydi Bojorquez, and three other individuals in the rear seat vehicle were attempting to hide their faces from view. Deputy Riveroll asked the three individuals in the rear seat of the vehicle if they had any identification, all three stated that they did not. Deputy Riveroll then asked ROMERO to step out of the vehicle to speak to him. ROMERO complied and ROMERO explained to the officer that she had picked up the males from immigration, and that they had just been released. ROMERO did not know the names of the passengers. Due to Deputy Riveroll's experience and knowledge that the I-10 corridor is a high traffic area for human smuggling, he suspected that he had encountered a human smuggling event. Deputy Riveroll issued a ticket to ROMERO for violating ARS sections 28-4139A, 28-4135C, and 28-3482A. Deputy Riveroll then contacted the United States Border Patrol for further assistance.

4.  Border Patrol Agent (BPA) Jacobo Saspe from the Casa Grande Border Patrol Station arrived on scene at approximately 1:00am. Border Patrol Agents-Intelligence (BPA-I) A. Nava and V. Trinidad also arrived on scene to assist BPA Saspe. Upon arriving on scene, BPA Saspe spoke with Deputy Riveroll and approached the white Cherokee. BPA Saspe identified himself as a Border Patrol Agent and conducted an immigration inspection on the passengers. The front passenger, Bojorquez, stated she was a legal resident. All three passengers in the rear seat admitted to being citizens of Guatemala. They also admitted to being present in the United States illegally without proper documents to reside or be present legally in the United States. As BPA Saspe was escorting one of the rear passengers to his vehicle, the subject pulled away and ran across I-10 crossing all lanes of traffic narrowly avoiding being struck by multiple vehicles. Due to these circumstances, BPA Saspe was unable to pursue the subject and the subject avoided capture. BPA Saspe secured the other two rear passengers, who were later identified as Neftali Gonzalez-Cortez and Antonio Mendez. BPA Saspe advised the two undocumented non-citizens (UNCs) that they were under arrest for being present in the United States illegally. BPA Saspe then approached ROMERO, identified himself as a Border Patrol Agent, and explained to her that she was under arrest for suspicion of

transporting undocumented aliens. ROMERO, the two UNCs, and Bojorquez were placed in a marked United States Border Patrol vehicle and transported to the Casa Grande Border Patrol Station.

5.  At the Casa Grande Border Patrol station, all subjects had their fingerprints electronically recorded and submitted for electronic analysis to determine any previous criminal or immigration history that the vehicle occupants might have. It was confirmed that the UNCs did not have any current, pending, or archived visas or permissions allowing them to be lawfully present in the United States.

6.  Records checks revealed that one of the Guatemalan nationals, Antonio Mendez, had been previously ordered removed from the United States by a designated immigration official. Mendez was removed from the United States to Guatemala through Phoenix, Arizona on September 27, 2023.

7.  On January 31, 2024, at approximately 3:31am ROMERO was advised of her *Miranda* rights. ROMERO stated that she understood her rights and that she was willing to speak with agents without a lawyer present. ROMERO explained that she is a United States citizens and resides in Tucson, Arizona. ROMERO stated that she was contacted by a man she knows as "Loba" and asked to pick up a family friend from Tucson. Loba stated he would pay her $1,400 USD. ROMERO stated she agreed to the arrangement and asked her friend Leydi Bojorquez to join her for the ride. ROMERO picked up the individual, near a Dollar General in Tucson. ROMERO then stated that she was contacted by a man she knows by "El Tigre". "El Tigre" asked ROMERO to pick up two more subjects near Three Points, Arizona and agreed to pay her $400 USD per person. ROMERO agreed to this arrangement. ROMERO stated she traveled to the location provided by "El Tigre" and picked up two more subjects. ROMERO stated she knew the two subjects that she picked up were UNCs and that she knew it was illegal to smuggle UNCs. ROMERO gave consent for agents to search her cellular phone and the phone was seized for evidence. This interview was video recorded.

8.   Neftali Gonzalez-Cortez was identified as one of the rear passengers of the white Jeep Cherokee and was interview by BPA-I Victor Trinidad and Alfonso Nava. Gonzalez-Cortez stated that he was a citizen of Guatemala illegally present in the United States. Gonzalez-Cortez stated that he paid $16,000 USD to be smuggled from Guatemala to Georgia. Gonzalez-Cortez stated that he and two other individuals crossed into the United States in the desert illegally and traveled on foot for approximately three days before reaching a paved road. Gonzalez-Cortez stated he was then picked up by a white SUV, with a female driver and front passenger. Gonzalez-Cortez stated that the white SUV traveled for several hours before it was pulled over by Deputy Riveroll. Gonzalez-Cortez was shown a six-pack line up of females with similar appearance and asked if he was able to identify the driver of the white SUV. Gonzalez-Cortez was able to pick ROMERO out of the line up as the driver of the white SUV.

9.   Based on the facts and circumstances stated in this Affidavit, I submit there is probable cause to believe that the defendant, Tonya Durinda ROMERO, did knowingly and intentionally combine, conspire, confederate, and agree with persons known and unknown, to transport and move within the United States, aliens who had come to, entered, and remained in the United States in violation of law, by means of transportation and otherwise, and in furtherance of such violation of law, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii), (a)(1)(A)(v)(1), and (a)(1)(B)(i).

SAMUEL A MAGUIRE
Digitally signed by SAMUEL A MAGUIRE
Date: 2024.02.01 10:11:33 -07'00'

Samuel Maguire
Border Patrol Agent
United States Border Patrol

Sworn to before me and subscribed telephonically on 1st day of February, 2024. 1:05pm

HONORABLE Deborah M Fine
United States Magistrate Judge